In re: Sateesh APTE, Debtor.

Sateesh APTE, Appellant,

v.

Romesh JAPRA, M.D., F.A.C.C., Inc., a California corporation, Appellee.

No. 95–15929.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 19, 1996.

Decided Sept. 30, 1996.

R. Kenneth Bauer, Walnut Creek, California, for appellant.

Patric J. Kelly, Duane W. Shewaga, Randy M. Hess, Adleson, Hess & Kelly, Campbell, California, for appellee.

Before: BEEZER and THOMPSON, Circuit Judges, GILLMOR, District Judge.*

DAVID R. THOMPSON, Circuit Judge:

Dr. Sateesh Apte, a Chapter 7 debtor, appeals the Bankruptcy Appellate Panel's (BAP) decision holding Apte's debt to Dr. Romesh Japra to be nondischargeable under 11 U.S.C. § 523(a)(2)(A) because it was in-

---

* The Honorable Helen W. Gillmor, United States District Judge for the District of Hawaii, sitting by designation.

curred by fraud. The BAP's decision reversed the bankruptcy court's decision that Japra's reliance on Apte's misrepresentations was not justifiable.

We have jurisdiction pursuant to 28 U.S.C. § 158(d), and we affirm the BAP.

### FACTS [1]

One of Apte's corporations, Apte Group, Inc., leased an office building in Pleasanton, California, from Rosewood Associates. Apte's intention was to sublet the space to other doctors, but he could not secure subtenants. Before long, Apte was $1.3 million behind in his lease payments to Rosewood. Rosewood filed an unlawful detainer action which led to negotiations and restructuring of the lease payments.

A couple of months after Rosewood filed its unlawful detainer action against Apte, Japra approached Apte about subleasing office space in the Pleasanton building. Japra did not know that Apte was in default on the master lease, or that Rosewood had filed an unlawful detainer action. Apte did not disclose these facts, nor did he tell Japra when Rosewood officially terminated the master lease a month later.

Although Japra had leased other offices, he had never negotiated a sublease, and he did not have legal counsel. He knew however, that his sublease was subject to the Rosewood master lease. Consequently, he insisted that his sublease contain a priority provision that would allow him to remain in possession of his office space even if Apte's master lease with Rosewood were terminated.

Japra signed the sublease on September 16, 1991. About two weeks later, Apte told him Rosewood had approved the sublease. In fact, Rosewood had told Apte it would not approve the sublease until the priority provision was deleted. For its own legal reasons, Rosewood refused to communicate with Japra. Japra, therefore, was dependent on Apte for his information.

The sublease required Japra to obtain Rosewood's written consent before making any improvements to the property. After repeated assurances from Apte that Rosewood had approved Japra's improvement plans, Japra began construction of his improvements. These improvements eventually cost $138,000.

Rosewood, which had not approved Japra's plans, soon became aware that construction was taking place and told Apte to put a stop to it. Apte did not do so. Instead, he encouraged Japra to continue construction while simultaneously telling Rosewood that construction had stopped.

When Japra's construction was about 95% complete, Apte finally told him his sublease had not been approved by Rosewood. Apte was in default in payments to Rosewood under the master lease, so Rosewood filed another unlawful detainer action. This led to termination of Apte's master lease. Japra was unable to come to terms with Rosewood and was evicted a few months later.

Apte filed a Chapter 7 bankruptcy petition. Japra filed a proof of claim based on rent he had paid and damages he had incurred. He then filed an action to have the debt declared nondischargeable on account of fraud, pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6).

After a hearing, the bankruptcy court found that Apte had made material misrepresentations with the intent to deceive Japra. Although the court found Japra had relied on these misrepresentations, it found Japra's reliance was unreasonable and unjustifiable. It concluded the debt was dischargeable. The court dismissed Japra's section 523(a)(6) claim on the ground that fraud claims could be brought only pursuant to section 523(a)(2)(A), and on the alternative basis that even if a section 523(a)(6) claim could be brought, the elements of fraud had not been proved.

In a published opinion, the BAP reversed. It held the bankruptcy court's factual finding that Japra's reliance was not justifiable was

---

**1.** A more thorough recitation of the facts is found in the BAP's opinion. *In re Apte,* 180 B.R. 223 (9th Cir. BAP 1995). We give an overview here.

clearly erroneous, and it ordered the bankruptcy court to enter judgment for Japra under section 523(a)(2)(A), rendering his claim for $146,727.46 in rent and construction costs nondischargeable. *In re: Apte,* 180 B.R. at 232. This appeal followed.

## DISCUSSION

### A. *Standard of Review*

■ We review decisions of the BAP de novo. *In re Eashai,* 87 F.3d 1082, 1086 (9th Cir.1996). On appeal from BAP, we review the bankruptcy court's rulings independently. *Id.* We review the bankruptcy court's conclusions of law de novo, and its factual findings for clear error. *Id.*

### B. *Nondischargeable Debt Under Section 523(a)(2)(A)*

■ A central purpose of the Bankruptcy Code is to allow an honest but unfortunate debtor to get a fresh start. *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991); *Eashai,* 87 F.3d at 1086. A dishonest debtor, on the other hand, will not benefit from his wrongdoing. *Grogan,* 498 U.S. at 286–87, 111 S.Ct. at 659–60; *Eashai,* 87 F.3d at 1086. Consistent with this policy, not all debts in bankruptcy are dischargeable. *See, e.g.,* 11 U.S.C. § 523.

Section 523 of the Bankruptcy Code provides in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\*　　\*　　\*　　\*　　\*　　\*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition

11 U.S.C. § 523.

■ In order to prove actual fraud under section 523(a)(2)(A), a creditor must establish: (1) that the debtor made a representation; (2) the debtor knew at the time the representation was false; (3) the debtor made the representation with the intention and purpose of deceiving the creditor; (4) the creditor relied on the representation; and (5) the creditor sustained damage as the proximate result of the representation. *Eashai,* 87 F.3d at 1086; *In re Britton,* 950 F.2d 602, 604 (9th Cir.1991).

### C. *Justifiable Reliance*

■ Although the statute does not state what degree of reliance is necessary for application of section 523(a)(2)(A), the Supreme Court has held that the creditor's reliance need be only justifiable, not reasonable. *Field v. Mans,* —— U.S. ——, ——, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995); *Eashai,* 87 F.3d at 1090.

"[A] person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Field,* —— U.S. at ——, 116 S.Ct. at 444 (quoting the Restatement (Second) of Torts (1976) § 540). Although one cannot close his eyes and blindly rely, mere negligence in failing to discover an intentional misrepresentation is no defense to fraud. *Eashai,* 87 F.3d at 1090–91 (quoting *In re Apte,* 180 B.R. 223, 229 (9th Cir. BAP 1995); *In re Kirsh,* 973 F.2d 1454, 1459 (9th Cir.1992)).

### D. *Whether Japra's Reliance Was Justifiable*

■ While finding that Apte's misrepresentations were made with the intent to deceive Japra, and that Japra relied on them, the bankruptcy court found that Japra's reliance was neither reasonable nor justifiable. It reasoned:

[Japra's reliance] on repeated assurances [by Apte] that critical documents had been approved and signed by the landlord, and [then proceeding] with tens of thousands of dollars worth of construction without seeing signed copies of those documents was neither reasonable nor justifiable.

The bankruptcy court also found support for this reasoning from its findings that Japra

was highly educated and experienced in real estate matters.

Japra was highly educated in medicine, but he was not highly experienced in real estate. He had never negotiated a sublease and did not have legal counsel.

The bankruptcy court faulted him for proceeding with construction of his improvements before he had received Rosewood's written consent, but he proceeded with construction in reliance on Apte's repeated assurances that Rosewood had approved his construction plans. We cannot agree with the bankruptcy court that Japra's reliance on Apte's assurances was not justifiable. Rosewood would not communicate with Japra. Japra's only source of information was Apte. Apte not only encouraged Japra to continue construction, he assured him his plans had been approved and gave plausible explanations why Rosewood's written consent had been delayed. Unaware of Apte's dire financial condition, Japra had no reason to believe Apte would lie. Japra may have been negligent in continuing construction without Rosewood's written approval, but negligence in failing to discover a misrepresentation is not a defense to fraud. *Eashai*, 87 F.3d at 1090; *Kirsh*, 973 F.2d at 1459.

Moreover, as noted by the BAP, the bankruptcy court did not consider the effect of Apte's myriad of nondisclosures. Apte carried on the sublease negotiations without disclosing that he was $1.3 million in default on the master lease, that Rosewood had instituted an unlawful detainer action against him, that Rosewood had officially terminated the master lease, and that Rosewood would never accept a lease containing Japra's priority provision. After Japra entered into the sublease, Apte never disclosed that Rosewood had not approved it, or that Rosewood had discovered Japra's improvements and ordered the construction to stop.

In another context, that of securities fraud, the Supreme Court has recognized the difficulty of proving the reliance or causation elements in a case of fraudulent nondisclosure:

> Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact.

*Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972) (citations omitted). *See also Titan Group, Inc. v. Faggen*, 513 F.2d 234, 239 (2d Cir.1975) ("In cases involving nondisclosure of material facts, even when coupled with access to the information, materiality rather than reliance thus becomes the decisive element of causation"), *cert. denied*, 423 U.S. 840, 96 S.Ct. 70, 46 L.Ed.2d 59 (1975).

The reasoning of these securities cases applies equally to fraud cases in the bankruptcy context. Indeed, the nondisclosure of a material fact in the face of a duty to disclose has been held to establish the requisite reliance and causation for actual fraud under the Bankruptcy Code. *In re Harris*, 458 F.Supp. 238, 242 (D.Or.1976) (the obligation to disclose and the nondisclosure of a material fact establish the requisite element of causation in fact), *aff'd*, 587 F.2d 451, 452 (9th Cir.1978) (affirming "for the reasons stated" by the district court), *cert. denied*, 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed.2d 285 (1979); *In re Demarest*, 176 B.R. 917, 922 (Bankr.W.D.Wash.1995) ("where an individual knows ... that another is acting without knowledge of material facts, the reliance element is satisfied by objective proof, *i.e.*, whether a reasonable person might have considered the facts important to his or her decision"); *In re Newmark*, 20 B.R. 842, 862–63 (Bankr.E.D.N.Y.1982). The fact that Rosewood had told Apte it would never accept Japra's suggested priority provision was clearly a material fact. Japra was insistent on this provision and testified he would not have entered the sublease if he had known the provision had been rejected.

 Apte argues he had no duty to disclose, therefore, his withholding of material information cannot support a finding of

fraud. We disagree. In determining the duty to disclose in the context of fraud under 11 U.S.C. § 523(a)(2)(A), we look to the common law concept of fraud at the time such language was added to the statute. *Field,* — U.S. at ———, 116 S.Ct. at 443–44. The Supreme Court in *Field* looked to the Restatement (Second) of Torts (1976) as "the most widely accepted distillation of the common law of torts" at the relevant time. *Id.* We do the same. Section 551 of that treatise provides:

> (1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.
>
> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> \* \* \* \* \* \*
>
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts (1976) § 551.

Under section 551(2)(e), Apte had a duty to disclose the fact that Rosewood would never accept the priority provision upon which Japra was insistent. This was basic to the transaction, and any reasonable person would expect its disclosure.

Furthermore, a party to a business transaction has a duty to disclose when the other party is ignorant of material facts which he does not have an opportunity to discover. 37 Am.Jur.2d, Fraud and Deceit § 148; Witkin, Summary of California Law, Fraud & Deceit § 700 (9th ed.); *Exeter Bancorporation, Inc. v. Kemper Sec. Group, Inc.,* 58 F.3d 1306, 1314 (8th Cir.1995) (Minnesota law); *Kaye v. Pawnee Constr. Co., Inc.,* 680 F.2d 1360, 1370–71 (11th Cir.1982) (Alabama law); *In re Christian,* 111 B.R. 118, 121–122 (Bankr.W.D.Tex.1989). Because Rosewood refused to communicate with Japra, Apte was Japra's sole source of information regarding the transaction. Apte had a duty to disclose material facts, such as Rosewood's refusal to incorporate Japra's requested priority provision and its refusal to approve Japra's construction plans.

We are satisfied the bankruptcy court clearly erred in finding that Japra's reliance was not justifiable. The bankruptcy court also found a lack of causation, but that finding resulted from its error in its finding as to reliance. Causation was established.

We affirm the BAP's order that the bankruptcy court enter judgment for Japra on his section 523(a)(2)(A) claim. Apte's debt to Japra is nondischargeable under that section. We need not consider Japra's alternative claim for nondischargeability under 11 U.S.C. § 523(a)(6).

The decision of the BAP is AFFIRMED.