STAHL,
Circuit Judge, dissenting.
Unlike the majority, I would leave intact the ruling of the bankruptcy court, affirmed by the bankruptcy appellate panel, that SIS, acting through Roger Normand, did not justifiably rely upon Gallo’s false affixation of his then-wife’s signature to the loan documents.[6] But even if I could agree that Normand’s putative reliance was justifiable, I would va-qate and remand for fact-finding on an issue the lower courts did not reach: whether Normand relied in fact upon the forged signature. For both these reasons, I dissent from the majority’s reversal of the lower court’s judgment.
I.
As an initial matter, I disagree with the majority’s statement that “[t]his case presents a sole legal issue ... [over which] this Court exercises plenary review.” Ante at 74. So long as there is no indication that the lower courts misapprehended the relevant legal principles (and my review of their opinions reveals that they were fully aware of the applicable justifiable reliance standard, as explicated by the Supreme Court in Field v. Mans, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)), a finding that Normand’s reliance, if any, was unjustified is a paradigmatic fact-dominated mixed fact/law determination that we should accept unless showm to be clearly erroneous. See In re Extradition of Howard, 996 F.2d 1320, 1328 (1st Cir.1993) (explaining this circuit’s sliding scale approach to mixed fact/law determinations); see also In re Apte, 96 F.3d 1319, 1324 (9th Cir.1996) (reviewing for clear error a no-justifiable-reliance determination made *77 in a bankruptcy court proceeding); cf., e.g., Henry v. Connolly, 910 F.2d 1000, 1003 (1st Cir.1990) (reviewing for clear error determination of no-reasonable-reliance made on a misrepresentation claim brought under Massachusetts law); Piekarski v. Home Owners Sav. Bank, F.S.B., 956 F.2d 1484, 1493 (8th Cir.1992) (reviewing for clear error determination of justifiable reliance made on a misrepresentation claim brought under Minnesota law); Offshore Prod. Contractors, Inc. v. R&public Underwriters Ins. Co., 910 F.2d 224, 232 (5th Cir.1990) (reviewing for clear error determination of justifiable reliance made on a misrepresentation claim brought under Louisiana law). Thus, we are empowered to reverse only if, on our review of the record as a whole, we have a “definite and firm conviction that a mistake has been made.” Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citation and internal quotation marks omitted).
Perhaps because I see the standard-of-review question differently than the majority, I also am at a loss to understand its appellant-friendly recitation of the facts relevant to the question we must answer. Because the trial court, following a bench trial, preter-mitted the question of reliance in fact but agreed with Gallo that any reliance by SIS was unjustifiable, we are obliged to view the facts in the light most flattering to its conclusion. See La Esperanza De P.R. v. Pérez Y Cia. De Puerto Rico, Inc., 124 F.3d 10, 12 (1st Cir.1997). So viewed, the facts on which we should base our judgment are as follows.
In his trial testimony, Normand admitted that, although he telephoned Gallo on the afternoon of Wednesday, December 20, 1989, to inform Gallo that the Board had approved the request for the letter of credit, he did not inform Gallo of the requirement of a second mortgage on the Sanford home until the morning of Friday, December 22,1989, when Gallo arrived in his office to sign the loan documents. Normand did not explain why he chose to wait until Friday to inform Gallo of the Board’s unanticipated (by Normand and Gallo) condition on the letter of credit. Nor did Normand explain his failure to ask Gallo and his wife to come in to sign the even the time that Gallo and his wife were co-owners of the Sanford home.
Normand further testified that, when he informed Gallo that SIS’s Board of Directors would require a second mortgage on the Sanford home in order to issue the requested letter of credit, Gallo told him that his wife “did not want or did not like a second mortgage on the property and that he [sic] would object to having it.” Despite this signal that Gallo’s wife would object to the Board’s condition, Normand permitted Gallo to take the documents from his office with the following promise: “I will get her to sign.” And later that same day, Normand uncritically accepted back from Gallo the loan documents with what purported to be Gallo’s wife’s unwit-nessed signature. Normand then signed his own name to the blank witness line without so much as a telephone call to Gallo’s wife to confirm that she had indeed assented to the mortgage. Finally, despite the fact that the letter of credit constituted what Normand described as “a very heavy loan for us,” Normand thereafter declined to follow customary SIS practice and do a title search on the property — a search that would have informed SIS that Gallo was misrepresenting that he had an interest in the property and surely would have caused SIS to question Gallo’s wife about whether she had, in fact, assented to the mortgage.
In view of this evidence, I cannot say with a definite and firm conviction that the trial court erred in concluding that Normand proceeded in the face of what amounted to a warning that a deception was underway. And as the Supreme Court acknowledged while explaining the justifiable reliance standard, such a warning puts to its recipient a duty to investigate (at least cursorily) before there may be justifiable reliance upon the ' misrepresentation. See Field, 516 U.S. at 71, 116 S.Ct. 437 (citing W. Prosser, Law of Torts § 108, at 718 (4th ed.1971)).
Yet Normand failed to undertake either of the cursory investigative routes obviously available to him at the time of Gallo’s highly irregular document submission; he neither telephoned Gallo’s wife to confirm her signature before witnessing it, nor searched the *78 title of the property in question. In my opinion, Normand’s inaction constituted a breach of the duty to investigate. The trial court therefore did not err in concluding that Normand (and, derivatively, SIS) assumed the risk arising from Gallo’s conduct. See Restatement (Second) of Torts § 545A, Cmt. b. (1976) (when the recipient of a misrepresentation proceeds in the face of facts making obvious the falsity of the representation, “his conduct is more analogous to assumption of the risk than to contributory negligence”).
II.
Even if I agreed with the majority that Normand’s putative reliance on Gallo’s wife’s signature was justifiable as a matter of law, I would remand for further fact-finding as to whether Normand relied in fact upon the signature. Cf. Field, 516 U.S. at 76, 116 S.Ct. 437 (noting that “the greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt about reliance in fact”). Because the bankruptcy court deemed any reliance in fact unjustifiable, it did not decide whether there was such reliance. Yet the facts just outlined suggest, to say the least, that Normand did not view the second mortgage as necessary. Moreover, I believe it worthwhile to emphasize one additional point not mentioned by the majority: although the other second mortgage required for the letter of credit — the second mortgage on the development — was recorded in due course, the mortgage on the Sanford home was not recorded until 1991, nearly two years after the letter of credit issued and a mere one week after another creditor recorded a $1.2 million lien against Gallo. I regard this lapse, which Normand was unable to explain at trial, as especially curious because it was the mortgage on the Sanford home on which the Board had insisted (apparently over Normand’s disagreement).[7] One can only assume that the Board insisted on the second mortgage on the home because it viewed the second mortgage on the development as insufficient to protect its interests in the event of a default and a calling of the letter of credit.
III.
Had the facts described above been adduced in a criminal bank fraud trial, they surely would have been sufficient to justify the giving of a willful blindness instruction. These same facts thus should be regarded as adequate to ground the trial court’s determination that Normand did not justifiably rely on Gallo’s forgery because Normand effectively ignored a warning that Gallo had forged his wife’s signature to the loan documents. Alternatively, these facts should be regarded as sufficient to warrant a remand for inquiry into whether Normand relied in fact on Gallo’s forgery.
I dissent.

. I limit my focus to Gallo’s forgery of his wife's signature because my conclusions with respect to this forgery render immaterial whether Normand, and therefore SIS, justifiably relied upon Gallo's concomitant representation that he had an interest in the Sanford home.

. People’s Heritage Bank, the financer of the development, held a first mortgage on the development, but SIS held the first mortgage on the Sanford home.