FILED

MAY 15 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.   NV-14-1358-KuDJu |
| MARK J. ESCOTO, | ) | Bk. No.   13-10096 |
| Debtor. | ) | Adv. No.   13-01058 |
| _____ | ) | |
| ROBERT G. HILLSMAN, | ) | |
| Appellant, | ) | |
| v. | ) | **MEMORANDUM**[*] |
| MARK J. ESCOTO, | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on March 19, 2015
at Las Vegas, Nevada

Filed – May 15, 2015

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Mike K. Nakagawa, Bankruptcy Judge, Presiding

Appearances:   Candace Carlyon of the Carlyon Law Group, PLLC argued for appellant Robert G. Hillsman; Samuel A. Schwartz of The Schwartz Law Firm argued for appellee Mark J. Escoto.

Before: KURTZ, DUNN and JURY, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

The plaintiff, Dr. Robert Hillsman, commenced a non-dischargeability action against the defendant, Dr. Mark J. Escoto, in Escoto's chapter 7[1] bankruptcy case. Hillsman alleged that Escoto fraudulently concealed a material fact and thereby induced Hillsman to extend the term of an existing loan. Citing Stevens v. Nw. Nat'l Ins. Co. (In re Siriani), 967 F.2d 302 (9th Cir. 1992), the court found that, while Escoto committed the alleged fraudulent act, Hillsman failed to demonstrate that his damages were a proximate result of Escoto's concealment.

On appeal, Hillsman contends that the bankruptcy court erred in its proximate cause analysis. First, Hillsman submits that the court applied an incorrect legal standard by requiring him to show that collection remedies existed at the time he agreed to extend the loan and that the value of those remedies dissipated during the extension. Further, Hillsman challenges the bankruptcy court's finding that he failed to satisfy te proximate cause standard articulated by the court.

The bankruptcy court did not consider whether all of the elements for nondischargeability under § 523(a)(2)(A) existed at the time Escoto's debt to Hillsman first became due. At that time, Escoto effectively may have obtained an extension of credit by failing to disclose a material fact. Accordingly, we VACATE and REMAND, so the bankruptcy court can make additional or

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

2

amended findings as of that time.

**FACTS**

In July of 2005, Escoto sued the contractor and certain subcontractors that built his home. He alleged injury to his property and family resulting from mold caused by negligent construction. While his lawsuit was pending, Escoto asked Hillsman, a friend and patient, for a loan to fund the litigation.

In March of 2008, Hillsman lent Escoto $200,000. The debt is evidenced by a demand promissory note bearing interest at the rate of seven percent (7%) per annum, and providing for interest only payments during the term of the note. The note was due on demand, on settlement of Escoto's state court litigation, or on March 11, 2011. Finally, the note referenced Escoto granting security interests in his dental practice, office building, and other personal property but Hillsman never took steps to perfect the security interests.

In July of 2008, Escoto settled with all defendants in the construction defect litigation except for the plumbing subcontractor. This $350,000 settlement was approved by the state court overseeing the litigation. In October of 2009, Escoto settled with the remaining defendant for an additional $350,000. The state court approved that settlement in November of 2009. Despite numerous and extended interactions between the friends, Escoto did not tell Hillsman about either settlement. According to the pretrial order that was entered in this adversary proceeding, Escoto's debt to Hillsman was secured by the settlement proceeds.

3

During the summer of 2009, Escoto divorced Shirley Ann Escoto. Ms. Escoto testified that the state court set aside the decree because Escoto made fraudulent representations during the case. Ms. Escoto also testified that some time after the entry of the divorce decree, Escoto withdrew $370,000 from their joint bank account. Hillsman failed to produce additional information regarding the source, disposition and whereabouts of these funds. The Escotos are now divorced.

The promissory note evidencing Escoto's debt to Hillsman had a maturity date of March 11, 2011. Before that date, Escoto failed to make several interest payments required by the note. In March of 2011, Escoto requested an extension of the loan term. Unaware of the two settlements, Hillsman agreed to the request, and the parties executed an agreement extending the repayment period for one year but otherwise leaving the terms of the demand promissory note unchanged. Escoto's delinquency under the terms of the note continued. In August of 2012, the two friends met and Escoto reaffirmed his commitment to repay the note but once again did not disclose the settlements.

On January 4, 2013, approximately five months after their encounter, Escoto filed a chapter 7 petition. After receiving notice of the petition, Hillsman contacted an attorney and finally learned that Escoto had settled the construction defect litigation four years earlier.

Eight days before he filed his bankruptcy petition, Escoto submitted a financial statement in connection with his divorce proceeding. The information contained in that statement conflicted with the information Escoto subsequently provided in

4

his bankruptcy statements and schedules. In his divorce proceeding, he stated his monthly income was $6,583. On his bankruptcy Schedule I and Form B22A, he stated his monthly income was $19,623.57. At trial, Escoto conceded that he had provided conflicting information in the two pending cases but explained that he had used different professionals to prepare the documents.

During the discovery process, Hillsman's counsel deposed Escoto on three separate occasions. At these depositions, Escoto testified inconsistently. For example, he initially disclosed only one settlement. Only after Hillsman's counsel obtained proof of a second settlement did Escoto concede the existence of two distinct $350,000 settlements. Escoto's inconsistencies endured at trial where, among other things, he testified for the first time that he could identify a specific date on which he informed Hillsman about the settlements. Additionally, his trial testimony appeared to conflict with his deposition testimony about the amount of his income in 2012.

At the conclusion of trial, the trial court found that Hillsman did not learn of the settlements until after Escoto filed his chapter 7 petition, that settlement of the litigation was a maturity event requiring repayment of the debt, that Escoto had a duty to disclose the two settlements to Hillsman, and that Escoto's failure to do so amounted to a fraudulent concealment on which Hillsman justifiably relied when agreeing to extend the maturity date of the loan. Citing Escoto's extensive lack of candor that spanned several years and multiple forums, the trial court found that he was not a credible witness. The court further

5

found that Hillsman had proved all elements necessary to establish the debt as nondischargeable with the exception of proximate cause. Specifically, the bankruptcy court ruled that Hillsman failed to demonstrate that he possessed valuable collection remedies on the date of the extension and that those remedies lost value during the renewal period.

In coming to this conclusion, the bankruptcy court examined the value of the potential remedies available to Hillsman at the time he agreed to the extension. Noting that there was no equity in the pledged properties, even if Hillsman had perfected his liens, the bankruptcy court discounted Hillsman's remedies as a secured creditor. As an unsecured creditor, Hillsman could pursue informal collection remedies such as telephone calls and correspondence but the bankruptcy court found little value in these activities. The court then considered Hillsman's ability to obtain a judgment and found that he failed (1) to identify assets available to satisfy a judgment that Escoto could not exempt under state law; and (2) to demonstrate how the value of his status as a judgment creditor declined over the extension period. Finally, the bankruptcy court contemplated Hillsman's equitable remedies in the form of a constructive trust created to recognize Hillsman's interest in the settlement proceeds. The court found such equitable remedies unavailable as the record indicated that Escoto had disposed of the proceeds prior to the extension date.

The bankruptcy court entered judgment in favor of Escoto on July 3, 2014. Hillsman timely filed his notice of appeal on July 15, 2014.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). This Panel has jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court err by requiring Hillsman to show that valuable collection remedies existed at the time of the loan extension and that those remedies lost value during the extended repayment period?

2. If the bankruptcy court applied the correct legal standard, did it err in finding that Hillsman failed to sufficiently demonstrate that such remedies existed and that those remedies lost value during the extension?

3. Did the bankruptcy court err by using the wrong time line in its proximate cause analysis? Specifically, should the court have considered an extension of credit to occur upon settlement of the construction defect litigation rather than confining its analysis to the later extension agreement?

## STANDARDS OF REVIEW

In appeals of non-dischargeability rulings, we review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009), aff'd, 407 Fed. Appx. 176 (9th Cir. 2010).

A bankruptcy court's findings regarding proximate cause under § 523(a)(2)(A) may be reversed only if clearly erroneous. Britton v. Price (In re Britton), 950 F.2d 602, 604 (9th Cir. 1991). We do not consider a finding of fact clearly erroneous

7

unless the finding is "illogical, implausible, or without support in the record." Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

**DISCUSSION**

**A.   The bankruptcy court applied the correct legal standard for determining proximate cause.**

Section 523(a)(2)(A) operates to except a debt from discharge when "an extension, a renewal, or a refinancing" of an existing obligation is obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." In order to prevent the discharge of a particular debt under § 523(a)(2)(A), a creditor must prove:

(1) misrepresentation, fraudulent omission[2] or deceptive conduct by the debtor;

(2) knowledge of the falsity or deceptiveness of his statement or conduct;

---

[2] When, as here, the fraud consists of a fraudulent omission or concealment, the creditor must show that the omission was material. See Apte v. Japra (In re Apte), 96 F.3d 1319, 1323-24 (9th Cir. 1996). If materiality is established, then the court typically may presume that the creditor justifiably relied on the omission. Tallant v. Kaufman (In re Tallant), 218 B.R. 58, 68 (9th Cir. BAP 1998)(citing In re Apte, 96 F.3d at 1323). Materiality also frees the creditor from proving some aspects of causation - that he or she would have acted differently but for the fraudulent omission. In re Apte, 96 F.3d at 1323. But nothing in In re Apte or In re Tallant suggests that proof of materiality renders it unnecessary for the creditor to prove whether and to what extent he or she incurred damages as a result of the fraud. Nor are we persuaded that these decisions should be interpreted in such a broad fashion as to entirely displace the causation and damages elements ordinarily required for a judgment of non-dischargeability.

8

(3) an intent to deceive;

(4) justifiable reliance by the creditor on the debtor's statement or conduct;

(5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. In re Weinberg, 410 B.R. at 35 (citing Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1080, 1085 (9th Cir. 2000)); see also Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh), 973 F.2d 1454, 1457 (9th Cir. 1992). The creditor must prove each element by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 284 (1991).

Focusing on the final element, the Ninth Circuit has clarified the nature of proximate cause in a renewal context. To prove causation on a § 523(a)(2)(A) claim based on an extension, a renewal, or a refinance, a creditor must show "that it had valuable collection remedies at the time it agreed to renew, and that such remedies lost value during the renewal period." In re Siriani, 967 F.2d at 306. See also Cho Hung Bank v. Kim (In re Kim), 163 B.R. 157, 161 (9th Cir. BAP 1994), aff'd, 62 F.3d 1511 (9th Cir. 1995).

The debtors in Siriani borrowed $1.2 million to purchase an apartment building in connection with their involvement in a limited partnership. As part of the loan agreement, the lender required a financial guaranty bond. Northwestern Insurance Company agreed to issue a bond so long as the debtors indemnified it for any claims the lender made against the bond. Unable to repay the loan within the original term, the debtors sought an extension and a renewal of the bond with Northwestern. To obtain

9

the renewal, the debtors submitted financial documents which understated their personal obligations. The debtors defaulted on the loan and failed to comply with the terms of the indemnity agreement after the lender collected from Northwestern. A short time later, another creditor filed an involuntary petition against the debtors and Northwestern initiated a non-dischargeability action.

The bankruptcy court ruled against Northwestern for a failure to demonstrate that its loss arose from the fraudulently obtained renewal. While the creditor had shown that "it possessed valuable collection rights at the time it contemplated the renewal, and that those rights became worthless during the renewal period," the bankruptcy court ruled that Northwestern had failed to show proximate cause as it presented no evidence "that it would have exercised those rights with sufficient alacrity to avoid preference problems." Id. The parties appealed and the Bankruptcy Appellate Panel reversed.

Affirming the reversal, the Ninth Circuit agreed with the bankruptcy court to the extent that proximate cause required Northwestern to show "that it had valuable collection remedies at the time of the renewal, and that such remedies lost value during the renewal period." Id. However, the court declined to impose a "creditor's diligence" requirement forcing a creditor to show "that it would have exercised its collection remedies in a sufficiently timely fashion to collect the debt." Id. The court reasoned that such a requirement would impose too great a burden on defrauded creditors and would force bankruptcy courts "to divine what might have happened." Id.

10

To comply with <u>Siriani</u> and demonstrate that the extension proximately caused his loss, Hillsman needed to show: (1) that he possessed valuable collection remedies at the time the loan term was extended; and (2) a depreciation in the value of those remedies during the extended repayment period. See <u>In re Kim</u>, 163 B.R. at 161. While Hillsman observes that § 523(a)(2)(A) does not contain the specific standard articulated in <u>Siriani</u>, neither the bankruptcy court nor this Panel may disregard <u>Siriani</u>. Accordingly, we find that the bankruptcy court did not commit reversible error by applying the proximate cause standard specified in <u>Siriani</u>.

**B.    The bankruptcy court's finding that Hillsman failed to establish proximate cause with respect to the extension agreement is not clearly erroneous.**

At the outset, the Panel notes that, "[t]he bankruptcy court's finding of proximate cause is reviewed for clear error, 'even though the finding may depend to some extent upon law.'" <u>In re Siriani</u>, 967 F.2d at 304 (quoting <u>Rubin v. West (In re Rubin)</u>, 875 F.2d 755, 758 (9th Cir. 1989)).

Hillsman contends that if the bankruptcy court correctly applied <u>Siriani</u>'s proximate cause standard, it erred because Hillsman presented evidence sufficient to overcome the burden imposed by <u>Siriani</u> with respect to the period of time the extension agreement was in effect. To support his position, Hillsman points to assets and funds potentially in Escoto's possession at various points in time. These include $370,000 withdrawn from a bank account, approximately $160,000 of income Escoto claimed in 2011, Escoto's monthly earnings of $19,623.57

11

in 2012, income from Escoto's businesses, and a Land Rover that Escoto eventually sold for $23,500. While Hillsman's evidence shows that Escoto received a substantial amount of money over an extended period of time, this evidence alone does not satisfy Siriani.

Identifying funds to which Escoto may have had access is insufficient. Siriani requires a creditor to demonstrate the existence of valuable collection remedies at a specific point in time. By simply pointing to evidence of certain funds, Hillsman did not necessarily place these funds in Escoto's possession at the time the extension agreement was entered into or during the extension period. For instance, Ms. Escoto testified that Escoto withdrew $370,000 from the couple's joint bank account on an unidentified date. Even if the Panel assumes her testimony is true, Hillsman provided no evidence that Escoto possessed these funds at any time relevant to the extension agreement.

A second defect with Hillsman's argument is that placing assets or funds in Escoto's possession at the relevant time does not end the proximate cause analysis. In addition to identifying the existence of remedies, Siriani requires a creditor to show a reduction in the value of such remedies during a specific period of time. Assuming Escoto possessed funds or available assets at the requisite point in time, Hillsman did not present any evidence that these funds or assets were dissipated during the extension period. As an example of this defect, Hillsman points out that Escoto sold a Land Rover he may have possessed at the time of the extension. However, the record shows that the sale of the Land Rover occurred approximately one year after the

12

expiration of the extension. Hillsman does not explain how this translated into the loss of a valuable remedy during the extension period.

The bankruptcy court recognized such deficiencies in the record before it. After examining his status as a secured creditor, an unsecured creditor, and a judgment creditor, the bankruptcy court found that Hillsman had neither demonstrated the existence of valuable collection remedies available when the extension agreement was entered into or how such remedies lost value during the extension period.

We cannot hold that the bankruptcy court committed clear error simply because it declined to draw certain inferences from an inconclusive record. Rather than speculating about the nature and extent of assets and any associated collection remedies available when the extension agreement was negotiated, the bankruptcy court made a factual determination based on the record before it: "Hillsman has failed to meet his burden of proof under Section 523(a)(2)(A)." Our review of the record does not reveal any factual findings on this issue that are "illogical, implausible, or without support in the record." In re Retz, 606 F.3d at 1196. Consequently, we cannot conclude that the bankruptcy court committed clear error regarding this issue.

**C. The bankruptcy court erred by limiting its proximate cause analysis to the date of the extension agreement.**

Hillsman's final argument calls into question the timing of Escoto's fraudulent conduct as determined by the bankruptcy court. According to Hillsman, Escoto's failure to disclose the

13

settlements fraudulently induced Hillsman to effectively forbear from immediately demanding repayment of the loan and that this forebearance amounted to an extension of credit. Because the forbearance predates the extension agreement, Hillsman submits that the bankruptcy court should have applied the proximate cause analysis beginning on the date of settlement, rather than focusing solely on the date Hillsman voluntarily agreed to extend the loan. Hillsman posits that such an analysis would have satisfied the Siriani requirements since Escoto's fraudulent omissions and depletion of the settlement proceeds allegedly denied Hillsman the opportunity to collect from those monies.

In examining Hillsman's argument, it is important to keep in mind what occurred at trial. In a joint pretrial memorandum, Hillsman informed the bankruptcy court that he would proceed only under his § 523(a)(2)(A) claim for Escoto's fraudulent omission in relation to the settlement. Hillsman did not pursue a claim for Escoto's conversion of the settlement proceeds nor did Hillsman allege fraud in relation to the original loan transaction. At trial, although he alleged fraud upon consummation of the settlements, the main thrust of Hillsman's argument focused on Escoto's concealment in relation to the extension agreement. At the conclusion of trial, the bankruptcy court rendered a memorandum decision finding that Escoto's concealment amounted to fraud and induced Hillsman to grant the extension. Nevertheless, the court ruled against Hillsman for his failure to demonstrate that he had lost valuable collection remedies existing at the time he agreed to extend the repayment term. Importantly, the memorandum decision does not address the

14

contention that Escoto effectively obtained an extension of credit earlier – at the time he first failed to disclose the settlement(s).

In the parties' joint pretrial memorandum, Hillsman cited Field v. Mans, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), in support of the notion that Escoto's fraudulent nondisclosure amounted to an extension and, thus, rendered the debt nondischargeable.

In Field v. Mans, the Fields sold real property to a corporation wholly owned by Mans. A second mortgage containing a due on sale clause secured a portion of the purchase price along with Mans' personal guarantee. Shortly after the transaction, Mans caused his corporation to transfer the property to a newly formed partnership. Within a few days of this second transfer, Mans' attorney wrote to the Fields requesting a waiver of the due on sale clause in a manner suggesting that the second transfer had not yet occurred. The Fields offered to waive the clause in exchange for $10,000. Mans responded in a second letter refusing the offer but again failing to disclose the transfer. The discussion ceased, and Mans never disclosed the transfer. The Fields finally learned of the transfer upon Mans' filing of a bankruptcy petition. They reacted by filing a complaint alleging that Mans' misdirection fraudulently induced them to forbear from exercising their rights under the due on sale clause and that their forbearance amounted to an extension of credit. The Fields further asserted that, because of this, Mans' personal obligation was non-dischargeable under § 523(a)(2)(A).

The bankruptcy court found that, while the Fields may have

15

relied on Mans' misrepresentation in forbearing, their reliance was not reasonable. Therefore, the court concluded that the debt was dischargeable. The circuit court affirmed. See Field v. Mans, 36 F.3d 1089 (1st. Cir. 1994). Upon further appeal, the Supreme Court granted certiorari and concluded that the applicable standard to determine non-dischargeability under § 523(a)(2)(A) is justifiable, rather than reasonable, reliance. Field v. Mans, 516 U.S. at 74-75. The Court remanded the matter to the bankruptcy court for further proceedings.

On remand, Mans questioned whether the Fields' forbearance equated to an extension within the meaning of § 523(a)(2). See Field v. Mans (In re Mans), 203 B.R. 355 (Bankr. D.N.H. 1996). Upon a second appeal, the First Circuit held that a forbearance from the exercise of a right to accelerate the maturity date of an existing debt constitutes an extension of credit for the statute's purpose. Field v. Mans, 157 F.3d 35, 45-46 (1st Cir. 1998). While the court acknowledged that "the concealed sale was not technically a new 'agreement' concerning the existing credit, it triggered legal rights ... which markedly altered the credit relationship between the parties." Field v. Mans, 157 F.3d at 43. Further, "by deceiving [the Fields] into continuing a credit arrangement they now had the right to terminate, the fraud related to what can properly be called 'an extension of credit.'" Id.

In arriving at its conclusion, the court examined the policies behind discharge exceptions under § 523(a)(2) and stated that such considerations "militate against a narrow and hyper-technical parsing of the individual terms" contained in the

16

statute. Field v. Mans, 157 F.3d at 44. Too narrow a reading, the court reasoned, would result in situations where "one dishonest debtor would receive a 'new beginning' while another, who engaged in fraudulent conduct that was virtually identical, would not - for reasons unrelated to the object of denying bankruptcy protection to debtors whose debts were procured by fraud." Id. In essence, rigidly interpreting the term "extension" in a way that renders dissimilar results in substantively similar situations conflicts with the purpose of § 523(a)(2).

This Panel agrees with the First Circuit's reasoning and considers it appropriate to apply the First Circuit's holding to the facts of this case. Escoto's settlement of the construction defect litigation triggered Hillsman's right to immediate repayment of Escoto's debt. Escoto's concealment deprived Hillsman of the ability to exercise that right, and Escoto thereby effectively procured a forbearance. The fact that Escoto obtained the forbearance without Hillsman's knowledge serves to further illustrate the surreptitious nature of the fraud. Escoto should not be permitted to benefit from an overly narrow definition of the term "extension" that is disconnected from the statute that informs its meaning. As the First Circuit stated in Field v. Mans, "[i]t is no great leap to say that fraudulent concealment and frustration of [Hillsman's] acceleration right was tantamount to an 'extension' ... of the existing credit." Id. Thus, the Panel concludes that Escoto's concealment of the settlement(s) resulted in an extension of credit for purposes of § 523(a)(2).

In light of our holding that Escoto effectively obtained an

17

extension of credit when he failed to disclose the settlement and thereby prevented Hillsman from immediately demanding repayment in accordance with the terms of the note, on remand, the bankruptcy court will need to focus on this earlier time period and make additional or amended findings in order to determine whether all of the § 523(a)(2)(A) elements were satisfied. We express no opinion on what sort of findings the bankruptcy court should make on remand.

**CONCLUSION**

For the reasons set forth above, we VACATE the bankruptcy court's judgment, and we REMAND for additional or amended findings.

18