**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUL 23 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: JOEL WERNER; CATHLEEN WERNER,<br><br>Debtors,<br>_____<br><br>JASON SCOTT WICKAM,<br><br>Appellant,<br><br>v.<br><br>ALAN IVAR; et al.,<br><br>Appellees. | No. 19-60007<br><br>BAP No. 17-1266<br><br>MEMORANDUM[*] |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Spraker, Taylor, and Faris, Bankruptcy Judges, Presiding

Submitted April 15, 2020[**]
Pasadena, California

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Before:  COLLINS and LEE, Circuit Judges, and PRESNELL,*** District Judge.

Partial Concurrence and Partial Dissent by Judge COLLINS

Chapter 7 debtor Jason Wickam appeals the Ninth Circuit Bankruptcy Appellate Panel's affirmance of the Bankruptcy Court's determination, in a consolidated adversary proceeding, that certain of his debts were nondischargeable under 11 U.S.C. § 523(a)(2)(A) as being the product of fraud.

The debts originated as investments in the Coral Blue Project, a real estate development project that was run by Wickam and Joel Werner and which eventually failed.  The project involved building high-end spec homes on four lots purchased for that purpose.  The investors at issue here--an individual, David Roche, and a married couple, Alan and Deborah Ivar--contend that Wickam and Werner made a number of material misrepresentations and omissions regarding the project, in the absence of which they would not have invested (and subsequently lost) their money.  Wickam disputes that the debts resulted from any fraud on his part and argues that the Bankruptcy Court failed to make the necessary factual findings to support its nondischargeability determinations.

In appeals from judgments under 11 U.S.C. § 523(a)(2)(A), we review the bankruptcy court's factual findings under the clearly erroneous standard and its

---

***    The Honorable Gregory A. Presnell, United States District Judge for the Middle District of Florida, sitting by designation.

legal conclusions de novo. *Candland v. Ins. Co. of N. Am. (In re Candland)*, 90 F.3d 1466, 1469 (9th Cir. 1996). Findings of fact are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson, et al (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). When factual findings are based on determinations regarding the credibility of witnesses, we give great deference to the bankruptcy court's findings. *Id.* On appeal from the Bankruptcy Appellate Panel, we review the Bankruptcy Court's rulings independently. *Citibank v. Eashai (In re Eashai)*, 87 F.3d 1082, 1086 (9th Cir. 1996).

A discharge under Chapter 7 of the Bankruptcy Code does not discharge an individual debtor from any debt for money, property, or services to the extent that the money, property, or services were obtained by false pretenses, a false representation, or actual fraud. 11 U.S.C. § 523(a)(2)(A). To establish that a debt is not dischargeable under 11 U.S.C. § 523(a)(2)(A), a creditor must prove, by a preponderance of the evidence, five elements: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. *Turtle Rock Meadows Homeowners Ass'n v. Slyman* (*In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000).

The Bankruptcy Court originally ruled in favor of the Ivars and Roche after a trial in 2013. On appeal, the Ninth Circuit Bankruptcy Appellate Panel (henceforth, the "BAP") reversed on the grounds that the Bankruptcy Court had not made sufficient factual findings. On June 27, 2017, the Bankruptcy Court entered new findings of fact and conclusions of law to support its decision that the debts were not dischargeable. In particular, the Bankruptcy Court judge made a finding, based on the totality of the evidence and the presentation in open court by the witnesses, that "Wickam was, in fact, not credible," and that she believed that the version of events presented by the Plaintiffs was truthful. Wickam appealed again, but this time the BAP affirmed the decision of the Bankruptcy Court, with one judge dissenting as to the nondischargeability of the Ivars' second investment.[1] This appeal followed.

## I.     The Ivars' Initial Investment

In August 2006, the Ivars made their initial investment in the Coral Blue Project by issuing a $216,000 check to Coral Blue, LLC, an entity controlled by Wickam and Werner. The Bankruptcy Court found that as of the date of the Ivars' initial investment, Wickam knew the following facts, which were unknown to the Ivars:

---

[1] The Ivars initially invested $216,000 in the project. After construction began, they invested another $600,000. The investments are discussed separately below.

1.      The Coral Blue Project lots were going to be owned by Connexian Investments, Inc. (henceforth, "Connexian"), another entity controlled by Wickam and Werner, rather than Coral Blue, LLC, as had been represented in the Coral Blue, LLC Operating Agreement that had been provided to the Ivars.

2.      The primary loan for the project had not been fully funded. Specifically, an entity named Point Center Financial had committed to lend approximately $6.6 million, which was to be used to buy all four of the Coral Blue Project lots and finance construction of two of the four spec homes. At (essentially) the last second, Point Center Financial notified Wickam and Werner it could only fund $4.4 million, and they were forced to begin the project with this lesser amount.

3.      The Point Center Financial loan required full repayment within 12 months or the property would be subject to foreclosure.

4.      Point Center Financial was a "hard money" lender as opposed to a "conventional" lender.

**A. Materiality**

Wickam first argues that the four facts cited by the Bankruptcy Court were not material. Immaterial facts cannot serve as the predicate for a finding of fraud. *See, e.g.*, *Apte v. Romesh Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319, 1324 (9th Cir. 1996). But a material fact is simply one "that a reasonable investor

5

might have considered . . . important in the making of [the investment] decision." *Id*. (internal quotation marks and citation omitted).

All four of the facts cited by Wickam went to the financial underpinnings of the Coral Blue Project:  the fact that the lender, Point Center, had only funded two thirds of the amount it had originally promised to provide; the unrealistically short 12-month payment deadline; Wickam and Werner being unable to obtain conventional financing and being forced to deal with a hard money lender; and title to the lots being held by Connexian rather than Coral Blue, LLC.  All four of these facts were ones that a reasonable investor would have considered important in deciding whether to invest in the Coral Blue Project.  The Bankruptcy Court did not err in finding these facts to be material.

## B.  Knowledge of Falsity

Wickam next contends that the Bankruptcy Court failed to cite a factual basis for its finding that he knew, at the time the Ivars made their initial investment, that the Coral Blue Project lots would be owned by Connexian rather than Coral Blue, LLC.  But the parties' stipulated facts--to which the Bankruptcy Court cited--established that Connexian had been the entity seeking to borrow the money to buy the lots, that Connexian had entered into purchase contracts for them, and that Connexian had put down $220,000 in deposits on them.  The Bankruptcy Court's finding on this point is adequately supported by the record.

6

Wickam also argues that there is no support for the Bankruptcy Court's finding that he knew that Point Center was a hard money lender, but again, the parties' stipulated facts provide a sufficient basis to infer such knowledge. Wickam further contends that the Coral Blue, LLC Operating Agreement gave him and Werner the discretion to make the financial decisions of which the Ivars complain. But the issue here is not one of authority but whether Wickam misrepresented the decisions that he made.

## C. Intent to Deceive

Wickam also complains that the Bankruptcy Court did not discuss the third element of an 11 U.S.C. § 523(a)(2)(A) claim, intent to deceive, instead simply stating that Wickam and Werner sought to induce the Ivars into investing in the Coral Blue Project. But intent to deceive may be inferred from surrounding circumstances. Here, the surrounding circumstances show that in August 2006, Wickam was in danger of losing the Coral Blue Project – and all of the money and effort invested up to that point – if the Ivars opted not to make that initial investment. Accordingly, the record supports the bankruptcy court's finding that Wickam failed to disclose material information for the sole purpose of inducing the Ivars to invest.

## D. Justifiable Reliance

Wickam contends that the Bankruptcy Court erred in determining that the

Ivars justifiably relied on the statement that Coral Blue, LLC would hold title to the four lots. First, he contends that they could not have relied on this assurance because, four months after their initial investment, they wrote a $200,000 check to Connexian and signed documents that indicated that Connexian held title to those lots. He also argues that it was illogical for them to rely on Coral Blue, LLC holding title to the lots because when they made their initial investment, they received a promissory note from Connexian – meaning that Connexian was the only entity promising them a return on that investment.

Neither of these assertions is persuasive. The Bankruptcy Court credited the Ivars' testimony that they relied on assurances from Wickam and Werner that Coral Blue, LLC would hold title to the lots. Seeing documents four months later suggesting otherwise would not retroactively affect their reliance at the time of their initial investment. And the Ivars testified that they paid little attention to the promissory note that they received in addition to their membership units in Coral Blue, LLC, because they expected to be paid when the first two houses were sold by the latter entity. Conversely, the Bankruptcy Court found that Wickam was not credible.

### E. Proximate Cause

Wickam argues that the Bankruptcy Court failed to make sufficient findings that his actions were the proximate cause of the loss. According to the

8

Restatement (Second) of Torts § 548A, "[a] fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance." In this case, Wickam and Werner were unable to complete construction of and sell the first two houses within the Point Center loan's one-year deadline. Because Wickam and Werner could not refinance that loan, Point Center foreclosed, causing the Ivars to lose their entire investment. When they made their initial investment, the Ivars were unable to properly assess the risk of this happening because of the failure to disclose such things as the funding shortfall from Point Center and the absence of assets held by Coral Blue, LLC. In the words of the BAP, "[t]he loss from a speculative, underfunded, and misrepresented construction project was wholly foreseeable, if not inevitable." The Bankruptcy Court made sufficient findings that Wickam's actions were the proximate cause of that loss.

## II. Roche's Investment

Roche invested a total of $200,000--$125,000 on September 9, 2006 and $75,000 on September 12, 2006--in the Coral Blue Project. Both checks were written to Connexian. The evidence and findings of the Bankruptcy Court in regard to Roche's $200,000 investment are largely the same as those in regard to the Ivars' initial investment. The Bankruptcy Court found that Wickam had a duty but failed to disclose to Roche the same four material facts that he failed to disclose to

the Ivars, and that Roche would not have made his investment if he had known the truth about these facts. The Bankruptcy Court also found that Roche lost his entire investment when Point Center foreclosed on the Coral Blue Project lots.

Wickam makes the same arguments in opposition to the Bankruptcy Court's findings that the debt to Roche was the product of fraud, and those arguments are as unavailing as to Roche's investment as they were in regard to the Ivars' initial investment. The Bankruptcy Court did not err in finding that the $200,000 debt to Roche was nondischargeable under 11 U.S.C. § 523(a)(2)(A).

### III. The Ivars' Second Investment[2]

On December 29, 2006, the Ivars invested an additional $200,000 in the Coral Blue Project, by way of a check issued to Connexian. On April 18, 2007, after being presented with an operating agreement for an entity referred to as "Coral Blue II, LLC," the Ivars invested an additional $400,000 in the project.[3] In the memo line of the check, which was made out to Connexian, Alan Ivar wrote "Lots 26 & 27 Ladera". The Ivars testified that they had been told by Wickam and

---

[2] Although the Ivars eventually wrote two more checks to invest in the Coral Blue Project, for simplicity's sake these transactions will be treated as a single, two-part investment.

[3] The operating agreement, dated March 27, 2007 and signed by Wickam and Werner, provided that Coral Blue II, LLC was a California limited liability company registered with the California Secretary of State on that same date. In reality, California Blue II, LLC was not registered with the California Secretary of State until November 15, 2007.

10

Werner that their additional $600,000 was to be used to get a head start on construction of the Coral Blue Project's third and fourth houses.

The Bankruptcy Court found that before the Ivars made their second investment, Wickam knew that the money was not going to be used for direct development expenses on the third and fourth houses. The Bankruptcy Court also found that Wickam had a duty to disclose this information but failed to do so because he wanted to entice the Ivars into investing, and that the Ivars would not have made their second investment if they had known the truth. Finally, the Bankruptcy Court found that the Ivars lost their entire $600,000 second investment when Point Center foreclosed.

## A. Materiality, Falsity, Intent to Deceive

As with the initial investment, Wickam challenges the Bankruptcy Court's finding (both as to materiality and knowledge of falsity) that he knew that the $600,000 would not be used for direct development expenses on the third and fourth houses. However, the expected use of this money would obviously be material to a potential investor. As for the issue of falsity, Wickam was in charge of keeping the construction budgets for the project. This fact, coupled with the fact (stipulated to by the parties) that most of the Ivars' $600,000 investment was quickly used by Connexian to pay other expenses (including Wickam himself) supports the finding that Wickam knew beforehand that the money would not be

11

used for construction on the third and fourth lots. This also supports the Bankruptcy Court's finding with regard to intent to deceive – *i.e.*, that Wickam withheld this information from the Ivars in order to entice them into making their second investment.

## B. Justifiable Reliance

As previously noted, the Bankruptcy Court credited the Ivars' testimony that when they made their initial investment in August 2006, they believed that title to the four Coral Blue Project lots would be held by Coral Blue, LLC, that Coral Blue, LLC would develop the lots, and that they would be paid from the sale of the resulting houses. The Bankruptcy Court also credited their testimony that, had they known that this would not be the case, they would not have made their initial investment.

However, just a few months later, they were asked to invest in a new entity-- Coral Blue II, LLC--on the same project, and they said they expected to be paid based on the sale of two of the same four lots that Coral Blue, LLC was supposed to sell to pay them back on their initial investment. In exchange for the $200,000 that they invested in December 2006, they received a 30-day promissory note[4] from Connexian rather than something indicating they had acquired an ownership

---

[4] The note was in default when the Ivars wrote their $400,000 check to Connexian in April 2007.

12

interest in Coral Blue II, LLC. They also received a Deed of Trust (which they were instructed not to record) indicating that Connexian, rather than Coral Blue, LLC, owned the four lots.

Two of the three judges on the BAP found the Ivars' reliance to be justified. However, the remaining judge, Judge Spraker, found that the knowledge gained by the Ivars from these documents was fatal to their claim of reliance:

> The Ivars were not entitled to turn a blind eye to the competing claims of ownership, multiple entities, secretive collateral, and the breach of the $200,000 promissory note in making their second investment. There were simply too many red flags for the Ivars to ignore before making their second investment.

Section 523(a)(2)(A) requires only justifiable (rather than reasonable) reliance. *Field v. Mans*, 516 U.S. 59 (1995). As the *Field* court noted, quoting the Restatement (Second) of Torts (1976), "a person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Id.* at 70. Moreover, "[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Id.* at 71. Notably, the Ivars were not professional investors, and they indicated by their testimony and their actions that they did not pay attention to the paperwork they received when making their investments. They testified that they had been told they were gaining

13

ownership interests in Coral Blue and Coral Blue II, rather than just lending money to Connexian. As they did not see themselves as lenders, it would make sense that they did not examine the promissory note (or the not-to-be recorded Deed of Trust) received in connection with their investment, which suggested Connexian owned the lots at issue. Their position that they did not pay attention to this paperwork is reinforced by the fact that the Ivars issued a $400,000 check to Connexian at a time when the note was already several months in default. Accordingly, though an investigation of the paperwork might have led them to reconsider, the Ivars' reliance on the statements of Wickam and Werner in connection with their second investment was justifiable. The Bankruptcy Court did not err in finding the debt to be nondischargeable.

**AFFIRMED**

14

*Wickam v. Ivar*, No. 19-60007

FILED

JUL 23 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

COLLINS, Circuit Judge, concurring in part and dissenting in part:

I concur in sections I and II of the court's memorandum, which affirm the judgment of Ninth Circuit Bankruptcy Appellate Panel ("BAP") insofar as it upholds the bankruptcy court's ruling that Wickam's debts arising from the Ivars' initial investment and from Roche's investment were nondischargeable under 11 U.S.C. § 523(a)(2)(A). But I disagree with the majority's affirmance of the BAP's judgment concerning the Ivars' second investment, and I therefore dissent from section III of the court's memorandum. For substantially the reasons explained by Judge Spraker in his dissent below, I conclude that, as to their second investment, the Ivars' reliance was not justified. *See Wickam v. Ivar* (*In re Werner*), 2019 WL 641411, at *15–18 (B.A.P. 9th Cir. Feb. 13, 2019) (Spraker, J., concurring in part and dissenting in part). Accordingly, I would reverse the BAP's judgment to the extent that it upholds the bankruptcy court's decision to exempt from discharge the debt arising from the Ivars' second investment.