**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.  CC-18-1221-FLS |
| CARLA LEE JOHNSTON-MUELLER, | Bk. No.  8:16-bk-12957-ES |
| Debtor. | Adv. Pro.  8:16-ap-01228-ES |
| CARLA L. JOHNSTON-MUELLER, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| CYNTHIA A. NOE, | |
| Appellee. | |

Submitted without Argument on May 23, 2019

Filed – June 5, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Erithe A. Smith, Bankruptcy Judge, Presiding

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appearances:    Appellant Carla Johnston-Mueller, pro se, on the brief; Michael B. Kushner, Michael C. Lubin, and Namson N. Pham of Kushner Calson, PC on the brief for appellee Cynthia Noe.

Before: FARIS, LAFFERTY, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Carla Johnston[2] borrowed over $250,000 from appellee Cynthia Noe to produce and distribute a movie. When Ms. Johnston failed to repay the loan, Ms. Noe successfully sued her in state court. The bankruptcy court determined that her debt to Ms. Noe was nondischargeable under § 523(a)(2)(A) because she failed to tell Ms. Noe that she planned to repay her only after she had repaid other creditors. Ms. Johnston appeals, arguing that she did not intend to defraud Ms. Noe and that the bankruptcy court misinterpreted the parties' contract.

We discern no error and AFFIRM.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are the Federal Rules of Civil Procedure.

[2] In the record, the appellant's name is listed as Carla Johnston-Mueller. We will refer to her as Carla Johnston because that is the name she uses in her briefs.

2

# FACTUAL BACKGROUND[3]

## A. Prepetition events

### 1. The loan to finance Ms. Johnston's movie

Ms. Johnston and Ms. Noe became friends sometime in 2010. Later, Ms. Johnston sought money from Ms. Noe to assist in various business ventures, including the production of a faith-based movie titled "The Truth: The Journey Within" and a planned taco restaurant.

In October 2010, Ms. Johnston and Ms. Noe executed a "secured promissory note," whereby Ms. Noe agreed to loan Ms. Johnston $254,502 for the production of "The Truth." The loan was secured by a partial interest in the planned taco restaurant. The note's repayment terms were less than precise; it provided:

### I. Promise to Pay

Borrower agrees to pay Lender the total amount of $254,502.00 (Two-Hundred Fifty-Four Thousand Five Hundred Two Dollars and no/100), together with interest payable on the unpaid principal at the rate of 7% per annum. Interest will accrue, unless notification otherwise [sic].

Lender will pay [sic] 1 point of net profit proceeds of THE TRUTH MOVIE, LLC, to a maximum point participation 5 time investment has been returned [sic].

---

[3] We borrow from the bankruptcy court's oral ruling. We also exercise our discretion to review the bankruptcy court's docket, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

. . . .

## II.   Repayment

The amount owed under this Promissory Note will be repaid in
full as the proceeds from THE TRUTH movie begin after
release date of 1/1/11 or sooner and shall continue until
proceeds with interest have been paid in full. In addition, profit
participation of net proceeds generated by THE TRUTH
MOVIE, LLC, film titled, The Truth and will be paid at the rate
of 1 point, without cap, in perpetuity [sic].

Ms. Noe advanced $254,502 to Ms. Johnston shortly thereafter.

Ms. Johnston had earlier borrowed approximately $1 million from
her ex-husband and $200,000 from her parents, and she later borrowed an
undisclosed sum from another friend. Ms. Noe said that she was only
aware that the ex-husband, Mark Mueller, had contributed $250,000.

"The Truth" was never released in theaters. Ms. Johnston claimed
that she finished the movie but could not secure a distributor to release it.
She abandoned efforts to release the movie in the fall of 2013.

Ms. Noe asked Ms. Johnston several times about repayment of the
loan. She claimed that Ms. Johnston responded with "cryptic and
increasingly bizzarre gibberish" but appeared to reaffirm her intention to
repay the loan.

Some time thereafter, Ms. Johnston received a $700,000 inheritance
from her parents' estate. She also settled a lawsuit for approximately

4

$750,000. Ms. Johnston did not repay Ms. Noe or any other creditor; she instead used the majority of the funds for another start-up business, OneTeam Humanity Foods, Inc. dba Nutburger ("Nutburger").

### 2. The state court judgment

In 2014, Ms. Noe sued Ms. Johnston and Nutburger in state court. The state court granted Ms. Noe summary adjudication on her breach of contract claim and entered judgment against Ms. Johnston for $254,502 plus seven percent interest per annum from January 1, 2011.

### B. Ms. Johnston's chapter 7 bankruptcy case

On July 13, 2016, Ms. Johnston filed a chapter 7 petition. She scheduled Ms. Noe's state court judgment as an unsecured claim totaling $436,854.28.

### C. Adversary proceeding

Ms. Noe filed an adversary complaint against Ms. Johnston, asserting a claim under § 523(a)(2) to determine that the state court judgment was nondischargeable. She alleged that Ms. Johnston had repeatedly assured her that she would repay Ms. Noe the money she had borrowed but never intended to do so.[4]

Ms. Johnston contended that she always intended to pay back Ms. Noe and denied that she intended to defraud Ms. Noe. She said that

---

[4] Ms. Noe also asked the bankruptcy court to deny Ms. Johnston's discharge under § 727. The bankruptcy court rejected this claim, and Ms. Noe did not appeal.

she earnestly attempted to distribute "The Truth," but distributors were not interested and she eventually just ran out of money.

During discovery, Ms. Johnston testified that her ex-husband was in "first position" and that she intended to repay Ms. Noe only after she repaid her ex-husband and parents:

Q. "First position" meaning you're going to pay him first?

A. Mr. Mueller was – is in first position before Cynthia Noe for repayment of moneys.

Q. What does "first position" mean?

A. It means that he loaned the money first before Cynthia Noe. So, if I get a $100 and I owe $100-plus to the first person, that means they're going to get paid back first. I owe Mr. Mueller over a million dollars.

. . .

Q. What is the – in your mind what is the order in which you are going to pay these people back?

A. I haven't gone that far in my mind.

Q. So, Mr. Mueller would be first, though; right?

A. Yes, Mr. Mueller would be first.

Q. And then between your parents, Cynthia, Tammy –

A.    Well, my parents loaned me money before Cynthia did after I was defrauded. So, whatever their dollar amount was before, because they loaned me money after when I ran out of money from Ms. Noe and Ms. Ralston, then my parents have stepped back in and loaned me more money. So, it would be sequentially whoever loaned me money first.

If I got a hundred bucks and I owe somebody 200, I'm going to pay the first guy back before I'm going to pay the second guy.

Ms. Johnston confirmed that Mr. Mueller was "first in line," her parents were "second in line," followed by Ms. Noe.

**D.    Trial**

The bankruptcy court held a trial on Ms. Noe's claims.[5] Ms. Noe testified that she believed that she would receive repayment of the loan by "the payment date" in January 2011. She testified that she did not know that Ms. Johnston intended to repay her ex-husband and parents first.

She argued that the state court judgment should be excepted from discharge under § 523 because Ms. Johnston did not intend to repay her pursuant to the terms of the promissory note. Rather, she (1) intended to repay Ms. Noe only after she had repaid other individuals over $1.2 million; (2) did not intend to repay her until she had enough money to

_____

[5] The bankruptcy court took judicial notice of the state court judgment, which "says on its face in terms of the finding in favor of Ms. Noe on the breach of contract claim indicating an amount of $254,502 with interest at the rate of seven percent per annum accruing since January 1, 2011."

repay all of her debts in a lump sum; and (3) only intended to repay her if "The Truth" was released and made sufficient profits.

Ms. Johnston testified that, when she and Ms. Noe signed the promissory note, "it was [her] intent to repay that money to Ms. Noe." She claimed that Ms. Noe knew that Mr. Mueller, her parents, and a friend had loaned over $1.2 million for production of "The Truth." When it became obvious that "The Truth" would not be released, she said that she intended to repay Ms. Noe from her Nutburger profits.

She denied that the promissory note included a definite repayment date: "the document as it reads required that proceeds from The Truth Movie would begin after the release date of 1/11. The release date never occurred on 1/11." She also testified that she would feel obligated to repay earlier investors before Ms. Noe: "in my mind I would owe the – the first person kind of like a succession, the first person who loaned me the money first. . . . Mark would be the first person in line to have that repaid, and then subsequently based on the order in which I owe money."

## E.    Judgment

The bankruptcy court held that Ms. Noe had established the elements of her § 523(a)(2)(A) claim, such that the state court judgment was excepted from discharge. It found that Ms. Johnston's testimony that she intended to repay Ms. Noe from the proceeds of "The Truth" "may have some credibility." Nevertheless, it found that Ms. Johnston made material

omissions with respect to repaying Ms. Noe:

> More troubling, however, is Defendant's testimony that in her mind she believed that those who loaned her money first, her ex-husband and her parents, for example, totaling approximately $1.25 million, should be paid ahead of, and not along with or pari passu with Plaintiff.

> Though Defendant has attempted to downplay this testimony, it is a critical point and goes directly to Defendant's state of mind at the time the note was signed. Defendant clearly had the . . . intent to pay the earlier loans before paying any amount to . . . the Plaintiff.

The bankruptcy court further found that the omissions were fraudulent and that Ms. Noe's reliance was justifiable:

> The failure to disclose an intent to prioritize the repayment of the loans is an omission that this Court considers to be fraudulent. The Court finds that Plaintiff's reliance on the terms of the note, which did not disclose that [sic] any contingency regarding the order of payment, other than it would commence January 1, 2011, presumably from proceeds, was in fact justifiable.

The court entered judgment in favor of Ms. Noe on her § 523(a)(2)(A) claim. Ms. Johnston timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

9

## ISSUE

Whether the bankruptcy court erred in ruling that the state court judgment was nondischargeable under § 523(a)(2)(A).

## STANDARDS OF REVIEW

When reviewing a bankruptcy court's determination of an exception to discharge claim under § 523, we review its findings of fact for clear error and its conclusions of law de novo. *See Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 28 (9th Cir. BAP 2009). "Whether a requisite element of a § 523(a)(2)(A) claim is present is a factual determination reviewed for clear error." *Tallant v. Kaufman (In re Tallant)*, 218 B.R. 58, 63 (9th Cir. BAP 1998) (citing *Anastas v. Am. Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1283 (9th Cir. 1996)).

"De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Papio Keno Club, Inc. v. City of Papillion (In re Papio Keno Club, Inc.)*, 262 F.3d 725, 729 (8th Cir. 2001) (citation omitted). If two views of the evidence

10

are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-75 (1985).

"We may affirm on any basis supported by the record." *Caviata Attached Homes, LLC v. U.S. Bank, Nat'l Ass'n (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 44 (9th Cir. BAP 2012) (citation omitted).

## DISCUSSION

Ms. Johnston argues that the court erred in finding that she did not intend to repay Ms. Noe. She also argues that the bankruptcy court misread the promissory note and contends that no payment is currently due to Ms. Noe; as such, it is irrelevant that she did not disclose the priority position of other creditors. Her arguments are unavailing.[6]

**A.** **The bankruptcy court did not err in holding that the state court judgment was nondischargeable.**

Section 523(a)(2)(A) excepts from discharge certain debts relating to "false pretenses, a false representation, or actual fraud . . . ." § 523(a)(2)(A). To prevail under § 523(a)(2)(A), a creditor must prove five elements: (1) misrepresentation, fraudulent omission, or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or

---

[6] Ms. Noe argues that Ms. Johnston waived all of her arguments on appeal because she failed to file a motion for involuntary dismissal under Rule 7041 (applying Civil Rule 41). This argument is nonsensical. There is no requirement that an appellant must first challenge the court's ruling after trial by filing a motion to dismiss, and Ms. Noe cites no such rule applicable to this situation.

conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. *Deitz v. Ford (In re Deitz)*, 760 F.3d 1038, 1050 (9th Cir. 2014) (citing *In re Weinberg*, 410 B.R. at 35).

Exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992). To prevail on her claim, the creditor must meet her burden by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

### 1. Fraudulent omission

The bankruptcy court found that Ms. Johnston failed to tell Ms. Noe that she intended to repay Ms. Noe only after she had repaid earlier creditors. The Ninth Circuit has recognized that, "[u]nder common law, a false representation can be established by an omission when there is a duty to disclose." *Citibank (S.D.), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1089 (9th Cir. 1996). It additionally noted that "bankruptcy courts have conceded that a debtor's silence or omission regarding a material fact can constitute a false representation which is actionable under § 523(a)(2)(A)." *Id.*; *see Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1246 n.4 (9th Cir. 2001) ("A debtor's failure to disclose material facts constitutes a fraudulent omission under § 523(a)(2)(A) if the debtor was under a duty to disclose

and the debtor's omission was motivated by an intent to deceive."); *Loomas v. Evans (In re Evans)*, 181 B.R. 508, 514-15 (Bankr. S.D. Cal. 1995) ("[T]o prevail in a fraud action, the plaintiff must establish that the debtor concealed facts and that the facts concealed were material. Concealed facts are material if 'a reasonable man would attach importance to the alleged omissions in determining his course of action.'" (quoting *Titan Grp., Inc. v. Faggen*, 513 F.2d 234, 239 (2d Cir. 1975))).

In *Eashai*, the Ninth Circuit relied on the Restatement (Second) of Torts § 551 (1976), which provides that an omission is fraudulent if there was (1) an omission that induced the other to act and (2) a duty to disclose.[7]

---

[7] The Restatement (Second) of Torts § 551 states, in relevant part:

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, . . .

> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

> . . .

(continued...)

The bankruptcy court found that Ms. Johnston "did not disclose the priority of repayment. The fact that Defendant knew she would pay $1.2 million ahead of Plaintiff, and did not disclose it is, in the Court's view, deceptive." We agree. The evidence shows that Ms. Johnston secretly intended to repay her ex-husband and parents before Ms. Noe and that she did not disclose this repayment priority to Ms. Noe. We find no clear error in the bankruptcy court's finding that Ms. Johnston concealed these facts from Ms. Noe.[8]

We must next determine whether she had a duty to disclose the true facts. The Restatement (Second) of Torts provides that a person has a duty to disclose "matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading" or "facts basic to the transaction, if he knows that the other is about to enter

---

[7](...continued)

> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551.

[8] The bankruptcy court found that Ms. Johnston harbored this intention at the time she borrowed the money from Ms. Noe. Ms. Johnston does not argue otherwise, and drawing this inference from the evidence was not clearly erroneous. The outcome would likely be different if Ms. Johnston did not form her priority-of-repayment intention until after she borrowed the money.

into it under a mistake as to them, and that the other . . . would reasonably expect a disclosure of those facts." Restatement (Second) of Torts § 551(2)(b), (e). The fact that Ms. Johnston did not intend to repay Ms. Noe until Ms. Johnston had first repaid over $1.2 million in other debt is a "fact basic to the transaction" that the court found was unknown to Ms. Noe. Any lender would expect a disclosure of such facts. As such, Ms. Johnston had a duty to disclose these facts, and her failure to do so rendered her omission fraudulent.

### 2. Knowledge of falsity

There is no dispute that Ms. Johnston knew that she did not inform Ms. Noe of her intended order of repayment. Ms. Johnston argues that Ms. Noe knew that Mr. Mueller had earlier invested in "The Truth," so there could be no omission or false statement. But this fact is irrelevant. Even if Ms. Noe knew that Mr. Mueller was also a creditor, she had no way of knowing that Ms. Johnston had a secret order of repayment in which Ms. Noe would get paid after Ms. Johnston's ex-husband and parents. Ms. Johnston even admits that "[t]here was no testimony stating that Appellant ever informed Appellee that Appellant would repay others before Appellee." Her knowledge of Mr. Mueller's involvement does not detract from the court's findings.

### 3. Intent to deceive

The bankruptcy court found that Ms. Johnston intended to pay

15

Ms. Noe from the proceeds of "The Truth." However, it found that her state of mind at the time she executed the promissory note indicated a hidden intent to pay earlier loans before paying any amount to Ms. Noe.

Ms. Johnston argues that she only testified that she thought her order of repayment was fair and "moral." But the bankruptcy court found that Ms. Johnston actually intended to defer payment to Ms. Noe. The evidence supports this finding. Ms. Johnston testified that, "in her mind," she would repay the creditors in the order of their loan, and Mr. Mueller was in "first position" and "would be the first person in line to have that repaid, and then subsequently, based on the order in which I owed money." The testimony was sufficient to allow the bankruptcy court to infer Ms. Johnston's intent to repay Ms. Noe only after she repaid other debts. This finding reasonably supports an inference that Ms. Johnston's nondisclosure was based on an intent to deceive. *See Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 167 (9th Cir. BAP 1999) ("intent to deceive can be inferred from the totality of circumstances"); *Alexander & Alexander of Wash., Inc. v. Hultquist (In re Hultquist)*, 101 B.R. 180, 183 (9th Cir. BAP 1989) ("the element of intent to deceive under § 523(a)(2)(A), can be inferred and established from the surrounding circumstances").

### 4. Materiality

When dealing with a fraudulent omission (as opposed to an

affirmative misrepresentation), bankruptcy courts consider materiality, rather than justifiable reliance. We recently stated:

> [I]n such situations[,] there is no representation upon which one could justifiably rely. *Titan Grp., Inc. v. Faggen*, 513 F.2d 234, 239 (2d Cir. 1975), *cited with approval in Apte v. Romesh Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319, 1323 (9th Cir. 1996). For this reason, "All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact." *In re Apte*, 96 F.3d at 1323 (quoting *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972)).

*Wickam v. Ivar (In re Werner)*, BAP Nos. CC-17-1266-STaF, CC-17-1269-STaF, 2019 WL 641411, at *6 (9th Cir. BAP Feb. 13, 2019). "An omission is material if a reasonable investor would have wanted to know the information before investing. Thus, the materiality issue focuses on what a reasonable investor would want to know. In essence, the plaintiffs are presumed to have relied on the omission if it was material." *Id.* at *10 (citing *In re Apte*, 96 F.3d at 1323).

The bankruptcy court focused on whether Ms. Noe's reliance on the terms of the promissory note was justifiable. It found that, because the promissory note did not disclose a contingency regarding the order of repayment, Ms. Noe's reliance on the terms of the note was justifiable. While we discern no error in these factual findings, the relevant question is

whether the omission was material. The record amply supports a finding of materiality. Under Ms. Johnston's repayment schedule, Ms. Noe would only begin receiving repayment of her loan after Ms. Johnston had repaid over $1.2 million (plus interest) to earlier investors. The existence of other loans with repayment priority is a material fact that any reasonable lender would want to know before loaning money.

### 5. Damages and proximate cause

The bankruptcy court found that "the damage to [Ms. Noe], that is, the non-payment of the loan that she entered into, not aware of the omitted intent of the Debtor, was proximately caused by her reliance on the Debtor's omission."

Ms. Johnston has not specifically and distinctly challenged this finding on appeal. *See Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1213 (9th Cir. 2017) (stating that an appellate court "will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief"); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."). In any event, we agree with the bankruptcy court that Ms. Johnston's fraudulent omission was a "substantial factor" leading to the loss of the money that Ms. Noe loaned to Ms. Johnston and that Ms. Noe's loss reasonably could be expected to result from the omission. *See In re Werner*, 2019 WL 641411, at *11.

Therefore, the bankruptcy court did not err in finding that Ms. Noe established each element of § 523(a)(2)(A).

**B.   Ms. Johnston's arguments are unavailing.**

Ms. Johnston argues that there was no debt due and owing and that she always intended to repay Ms. Noe. We reject each of these arguments.

**1.   The payment date in the promissory note is irrelevant.**

Ms. Johnston argues that the promissory note controlled the timing of repayment and nothing was due to Ms. Noe because repayment was contingent on the success of "The Truth." She contends that "[w]hether or not Appellant informed Appellee of other loans and repayment of those loans is irrelevant" because "the condition precedent in the Note did not occur[.]"

But the state court had already entered judgment on Ms. Johnston's debt to Ms. Noe. Therefore, the debt was due and owing.

**2.   The bankruptcy court properly considered the circumstantial evidence of Ms. Johnston's intent.**

Ms. Johnston contends that she did not intend to defraud Ms. Noe because she always intended to repay her, whether from the proceeds of "The Truth" or, later, from the profits of Nutburger. However, her ultimate intent to repay is not at issue; the bankruptcy court properly found that Ms. Johnston fraudulently concealed her "intent to pay the earlier loans before paying any amount to" Ms. Noe.

Ms. Johnston argues that the bankruptcy court improperly considered her inheritance and litigation settlement that she invested in Nutburger (rather than repaying her creditors). But the bankruptcy court agreed with Ms. Johnston on this point and explicitly stated that it did not consider such evidence as probative of her intent: "[T]he fact that the Debtor later received the settlement and inheritance money and did not use the money to pay Plaintiff . . . has no bearing on Debtor's state of mind at the time the note was executed."

Ms. Johnston also contends that the provision in the promissory note granting Ms. Noe one percent of the profits of "The Truth" shows that she intended to pay Ms. Noe irrespective of payments to earlier creditors. But the payment of one percent of profits was in addition to the repayment of the $254,502 loan. The promissory note provided that "the amount owed under this Promissory Note will be repaid in full . . . . **In addition**, profit participation of net proceeds . . . will be paid at the rate of 1 point, without cap, in perpetuity." (Emphasis added.) In any event, her promise to give Ms. Noe a share of the profits of "The Truth" has nothing to do with her intent to pay Ms. Noe only after other creditors.

## CONCLUSION

The bankruptcy court did not err in holding that the state court judgment was nondischargeable. Accordingly, we AFFIRM.