**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**
**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. CC-23-1072-GCS |
| VINCENT DWYNE HOWARD, | |
| Debtor. | Bk. No. 8:20-bk-11319-ES |
| | |
| VINCENT DWYNE HOWARD, | Adv. No. 8:20-ap-01115-ES |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| RAY HODGE & ASSOCIATES, L.L.C., | |
| Appellee. | |

Appeal from the United States Bankruptcy Court
for the Central District of California
Erithe A. Smith, Bankruptcy Judge, Presiding

Before: GAN, CORBIT, and SPRAKER, Bankruptcy Judges.

**INTRODUCTION**

Chapter 7 debtor Vincent Dwyne Howard ("Debtor") appeals the

nondischargeable judgment, entered pursuant to § 523(a)(2)(A),[1] in favor of

Ray Hodge & Associates, L.L.C. ("RHA"). After trial, the bankruptcy court

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

determined that Debtor made fraudulent statements and omissions to obtain a loan from RHA. Debtor argues that RHA failed to establish its standing and failed to prove: (1) Debtor's intent to deceive; (2) Debtor's duty to disclose information; and (3) RHA's justifiable reliance. The bankruptcy court correctly applied the law, and its factual findings are not clearly erroneous. We AFFIRM.

## FACTS[2]

### A. Prepetition Events

Debtor is an attorney who owned and operated a law firm called Howard Law, PC ("Howard Law"). Howard Law provided legal services in the areas of personal injury, workers' compensation, employment, Social Security disability, and bankruptcy. Debtor primarily managed the firm, and he employed attorneys who were knowledgeable in the firm's practice areas.

In 2015, the Consumer Financial Protection Bureau ("CFPB") began investigating Howard Law's bankruptcy practice. In 2017, the CFPB filed suit in the United States District Court for the Central District of California against Debtor and Howard Law. After CFPB filed the case, Debtor borrowed $400,000 from Series 5 Virage Master LP ("Virage") under a litigation funding agreement. To secure the loan, Debtor pledged as

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the adversary and main bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

collateral the expected attorney's fees in several of Howard Law's pending cases.

According to Debtor, in 2018 Howard Law's workers' compensation business, which comprised a significant portion of its revenue, began to suffer due to poor performance by the primary workers' compensation attorney, Anthony Oropallo. Debtor states that he terminated Mr. Oropallo in February 2018, and cut off his access to Howard Law's files. Debtor claims that, until April 2018, he continued discussions with Mr. Oropallo about how they could continue to work together, but during that period, Mr. Oropallo worked in concert with two other members of Howard Law, Jose Avina and Diana Martinez, to improperly transfer at least 70 workers' compensation cases to a law firm founded by Mr. Oropallo. In late April 2018, Howard Law terminated Mr. Avina and Mrs. Martinez and sued Mr. Oropallo's firm and the three individuals (the "Orapallo Case").

Because of Howard Law's financial difficulties in 2018, Debtor spoke with Ryan Hodge about a loan. Mr. Hodge was an attorney, licensed in Kansas, who owned and operated RHA. Mr. Hodge was also affiliated with a litigation funding company called Helping Hands Capital ("Helping Hands"), and he had previously performed underwriting for HMR Funding, a company that provided non-recourse medical advances. Based in part on Mr. Hodge's personal friendship with Debtor's then-wife, who had worked with Mr. Hodge at HMR funding, he agreed to loan Debtor money.

On April 16, 2018, Debtor completed and emailed to Mr. Hodge a "Request for Funding," seeking $150,000. Debtor also sent Mr. Hodge a list of cases showing Howard Law's revenue for the prior 12 months, consisting of $528,881.99 for workers compensation cases, $82,366.13 for personal injury and tort cases, and $165,905.19 for employment law cases. Debtor provided a list of Howard Law cases he intended to use as security for the loan, and the amount of attorney's fees he expected to recover from those cases.

After further communications, the parties executed an agreement ("Agreement") on May 10, 2018, under which RHA agreed to "advance to [Debtor] $150,000 as case expenses for cases set forth in [E]xhibit A." Attached to the Agreement as Exhibit A was the list, previously provided by Debtor, of 14 cases described as "litigation matters for which Howard or a member of his law firm is counsel of record . . . and for which Howard seeks an advance for case expenses . . . ."

The Agreement required Debtor to use the proceeds of the loan only for business or commercial purposes in connection with his business, and it required Debtor to immediately notify RHA of the resolution of any case listed in Exhibit A and pay RHA 20% of all attorney's fees received in those cases. Debtor represented in the Agreement that he had "not taken any action (including executing documents) or failed to take any action, which . . . would materially and adversely affect any Claim, or . . . would give any person or entity other than a Client or [Debtor] an interest in the

4

award or the proceeds stemming from a Claim." The Agreement also required Debtor to "promptly give written notice to Hodge" of: (1) "any litigation or proceeding affecting [Debtor] that could have a material adverse effect on the business, operations, property, or financial or other condition of [Debtor];" (2) "a material adverse change" in Debtor's business, operations, property, or financial condition; or (3) any adverse outcome in any case listed in Exhibit A.

Prior to executing the Agreement, Debtor did not notify RHA of Howard Law's loss of workers' compensation business, the pending Orapollo Case,[3] the pending CFPB suit,[4] or the lien in favor of Virage which encumbered expected fees in some of the cases listed in Exhibit A. In October 2019, Debtor permanently closed Howard Law. He never made any payments to RHA under the Agreement.

## B.    The bankruptcy and adversary proceeding

In May 2020, Debtor filed a chapter 7 bankruptcy petition. He scheduled a claim in favor of RHA for $221,993.84, but did not list it as contingent, unliquidated, disputed, or subject to offset. RHA filed a proof of claim for the same amount, and Debtor did not object.

---

[3] In November 2018, Debtor settled the Orapollo Case, and Mr. Orapollo's firm was authorized to continue representing the clients that left Howard Law.

[4] The CFPB case culminated in March 2019 with the entry of a consent judgment in the amount of $35,256,275 against Howard Law, Debtor, and another attorney, jointly and severally, and a civil penalty of $40,000,000. Debtor agreed to settle the CFPB judgment by paying $40,000 from his retirement account.

In August 2020, RHA filed an adversary complaint seeking to hold its claim against Debtor nondischargeable under § 523(a)(2)(A). RHA alleged that Debtor made several false representations in the Agreement regarding the status of the cases in Exhibit A and his intent to use the loan proceeds solely for business purposes. Debtor filed an Answer, admitting that RHA loaned him $150,000 pursuant to the Agreement, but denying that he made false representations.

The parties filed a joint pre-trial stipulation ("JPTS"), and the bankruptcy court conducted a trial in September 2022. Pursuant to the JPTS, Debtor and RHA agreed that: "The parties jointly executed an agreement dated May 10, 2018, signed by Debtor and Plaintiff . . . under which Plaintiff agreed to 'advance to Howard $150,000 as case expenses for cases set forth in exhibit A.'" The JPTS did not identify as a contested issue whether RHA was a party to the Agreement, but it did indicate as a contested issue whether RHA actually provided the funds.[5]

At trial, Debtor acknowledged that he did not tell RHA about the CFPB litigation or the Orapollo Case. RHA also presented evidence that at least one of the clients listed in Exhibit A to the Agreement had not retained Debtor or Howard Law. Mr. Hodge testified that RHA would not have made the loan had it known of the CFPB litigation or of Mr.

---

[5] Debtor first argued that Ryan Hodge, and not RHA, was a party to the Agreement in his trial brief.

Oropallo's termination and the collapse of Howard Law's workers' compensation practice.

At the conclusion of RHA's case, Debtor moved for a directed verdict and argued that RHA failed to prove it loaned the funds or that it was a party to the Agreement, and thus lacked standing. Debtor claimed that the funds came from Helping Hands, not RHA. The bankruptcy court denied the motion without prejudice and requested the issues be fully addressed in closing briefs. The trial concluded, and the parties filed their closing briefs.

RHA argued that it had standing, and it made the loan to Debtor. It pointed to uncontroverted evidence that Ryan Hodge was the sole member and manager of RHA and manager of Helping Hands, and testimony from Ryan Hodge that RHA transferred funds to Helping Hands—which ultimately made the transfer to Debtor—because Helping Hands could make wire transfers and RHA's operating account was not set up to do so. RHA further noted that Debtor admitted the debt was owed to RHA in his schedules and answer and should be estopped from arguing otherwise at such a late date.

In response, Debtor cited language in the Agreement which described the parties as individuals, and he contended that he scheduled the debt to RHA because he thought RHA was a party to the Agreement, and only realized it was not a party after the bankruptcy case was closed.

7

Debtor asserted that RHA failed to substantiate the purported transfer to Helping Hands and therefore could not prove it sustained damages.

In March 2023, the bankruptcy court rendered an oral ruling, holding the debt nondischargeable. The court determined that RHA had standing because the Agreement was signed by Ryan Hodge, "for Ray Hodge and Associates," and the unrefuted testimony of Ryan Hodge demonstrated that RHA funded the loan. Turning to the elements of § 523(a)(2)(A), the court found that Debtor made false representations in the Agreement that: (1) either Debtor or a member of his firm were attorney of record in the cases listed in Exhibit A; and (2) the cases in Exhibit A had been filed and litigation was ongoing.

The bankruptcy court also determined that Debtor fraudulently omitted that: (1) he was a defendant in a $75,000,000 action filed by the CFPB for alleged involvement in a fraudulent debt relief scheme; (2) four of the cases in Exhibit A were already pledged as collateral to Virage; and (3) Mr. Orapollo had downloaded client information and was purporting to represent several individuals whose cases were listed in Exhibit A. The court rejected Debtor's claims that his false representations were unintentional. It also found Debtor to be not credible because his testimony was at times evasive, and he seemed to lack basic knowledge of his firm and its operations. Finally, the court held that RHA justifiably relied on the representations, and it sustained damages under the Agreement. The court

entered a nondischargeable judgment in favor of RHA for $221,993.84, and this timely appeal followed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did RHA have standing to assert a claim for nondischargeability?

Did the bankruptcy court err by holding the debt nondischargeable under § 523(a)(2)(A)?

## STANDARDS OF REVIEW

Whether a party has standing is a question of law we review de novo. *All. United Ins. Co. v. Krasnoff (In re Venegas)*, 623 B.R. 555, 560 (9th Cir. BAP 2020). The ultimate question of whether a claim is nondischargeable is a mixed question of law and fact, which we review de novo. *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). Under de novo review, we "consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

We review for clear error any facts expressly or impliedly found by the bankruptcy court in determining standing. *Harkey v. Grobstein (In re Point Center Fin., Inc.)*, 890 F.3d 1188, 1191 (9th Cir. 2018). Similarly, when the appellant challenges the bankruptcy court's factual findings supporting its nondischargeability decision, we review those findings for clear error. *In re Su*, 290 F.3d at 1142. Factual findings are clearly erroneous if they are

illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

We may affirm on any ground supported by the record, whether the bankruptcy court relied upon, rejected, or even considered that ground. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014).

## DISCUSSION

Debtor argues that the bankruptcy court failed to properly analyze apparent ambiguities in the Agreement, including whether the individual lawyers or their law firms were the true parties to the contract. Debtor submits that Ryan Hodge, and not RHA, is the party to the Agreement and consequently, RHA lacked standing to file the complaint. Debtor also argues that the bankruptcy court erred by finding the misrepresentations were intentional, that Debtor had a duty to disclose the CFPB case or Mr. Orapollo's termination, and that RHA justifiably relied on the misrepresentations and omissions.

## A.    RHA had standing

"A federal court may exercise jurisdiction over a litigant only when that litigant meets constitutional . . . standing requirements." *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 906 (9th Cir. BAP 2011).

10

To establish constitutional standing, a party must demonstrate the "irreducible constitutional minimum" consisting of: "(1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *In re Venagas*, 623 B.R. at 561 (quoting *In re Sisk*, 962 F.3d 1133, 1141 (9th Cir. 2020)). The burden of establishing these elements is on the party invoking federal jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

To challenge the dischargeability of a debt under § 523(a)(2), the "creditor to whom such debt is owed" must timely file an adversary complaint. *Oregon ex rel Frohnmayer v. Lacy (In re Lacy)*, 74 B.R. 23, 24 (Bankr. D. Or. 1987); § 523(c); *see also* Rule 4007(a) ("[A]ny creditor may file a complaint to obtain a determination of the dischargeability of any debt."). A "creditor" is an entity that has a claim against the debtor, and a "claim" is a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." § 101(5), 10(A).

Debtor acknowledges that he borrowed $150,000 under the terms of the Agreement and did not make any payments on the loan. The evidence at trial demonstrated that the funds came from RHA. Debtor's standing argument is premised entirely on his belief that the Agreement identifies Mr. Hodge, and not RHA, as the party to the contract.

11

Debtor is correct that the Agreement is less than clear about who are the parties to the contract.[6] Notwithstanding these ambiguities, the bankruptcy court correctly held that RHA had standing to seek a nondischargeable judgment because Debtor admitted RHA was the creditor. He scheduled a non-contingent, liquidated, undisputed debt in favor of "Ryan [sic] Hodge and Associates, LLC." *See Heath v. Am. Express Travel Related Servs. Co. (In re Heath)*, 331 B.R. 424, 431 (9th Cir. 2005) ("bankruptcy schedules can constitute admissions under Fed. R. Evid. 801(d)(2)"). He did not object to RHA's proof of claim as unenforceable under § 502(b)(1); thus, RHA had an allowed unsecured claim. Additionally, in his Answer and the JPTS, Debtor admitted that RHA executed the Agreement and made the loan. Debtor's admissions resolved any ambiguity in the Agreement, and in light of these admissions, the bankruptcy court did not err by determining that RHA was a party to the Agreement.[7]

---

[6] The prefatory language in the Agreement states: "This Agreement is between Ryan Hodge (Hodge) and Vincent Howard . . . . This Agreement establishes their relationship between two lawyers in the representation of various clients as set forth in exhibit A." Yet, the Agreement also requires Debtor to indemnify "Hodge and each of its officers and other employees, representatives, and agents . . ." and it refers to a "general understanding of responsibility between the firms" with "each firm assum[ing] the same ethical responsibility . . . ." And, as the bankruptcy court found particularly relevant, the Agreement was signed by "Vince Howard, Attorney at Law" and "Ryan Hodge for Ray Hodge & Associates, L.L.C."

[7] Moreover, Civil Rule 17, made applicable by Rule 7017, provides further support for RHA's standing. Civil Rule 17(a)(1) requires that "[a]n action must be prosecuted in the name of the real party in interest." A party without a legal right to

## B.     Legal standards governing nondischargeability

Section 523(a)(2)(A) excepts from discharge any debt "obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To prevail on a nondischargeability claim under § 523(a)(2)(A), a creditor must prove, by a preponderance of the evidence: (1) misrepresentation, fraudulent omission, or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance on the debtor's statement or conduct; and (5) damage proximately caused by its reliance on the statement or conduct.

---

enforce an obligation is not a real party in interest. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008). But under Civil Rule 17(a)(3), "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."

The purpose of Civil Rule 17(a)(3) is "to prevent forfeiture of an action when determination of the right party to sue is difficult or when an understandable mistake has been made." *United States ex rel. Wulff v. CMA, Inc.*, 890 F.2d 1070, 1075 (9th Cir. 1989). Given the ambiguities in the Agreement, even if Mr. Hodge was the real party in interest, any mistake in selecting RHA as plaintiff was understandable. And though Mr. Hodge did not formally substitute or join as plaintiff, the record amply supports his ratification, which requires the real party in interest to: "(1) authorize continuation of the action and (2) agree to be bound by its result." *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 83 (2d Cir. 2013) (quoting *ICON Grp., Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473, 478 (3d Cir. 1987)); *see also* C. Wright & A. Miller, 6A Federal Practice and Procedure, Civil, § 1555 (3d ed. 2020).

Mr. Hodge is the sole member of RHA. He signed the Agreement, authorized the filing of RHA's proof of claim and adversary complaint, provided testimony at trial, and maintained that RHA was the proper party to bring the suit. Consequently, even if we were to agree that RHA was not the real party in interest, Mr. Hodge's ratification cured any problem with RHA's standing.

*Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 1996).

A fraudulent omission of a material fact may constitute a false representation if the debtor is under a duty to disclose. *Apte v. Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319, 1323-24 (9th Cir. 1996); *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1089 (9th Cir. 1996). A party to a business transaction is under a duty to disclose:

> facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

*In re Apte*, 96 F.3d at 1324 (citing RESTATEMENT (SECOND) OF TORTS § 551 (1976)).

## C. The bankruptcy court did not err by holding the claim nondischargeable under § 523(a)(2)(A).

Debtor argues that the bankruptcy court erred by finding he made intentional misrepresentations. But regarding fraudulent misrepresentations, he focuses entirely on the bankruptcy court's discussion of Howard Law's financial condition and whether the values in Exhibit A corresponded to expected attorney's fees or the total value of the case to the client. Neither of these issues formed the basis for the court's fraudulent misrepresentation finding.[8]

---

[8] The parties disputed whether the values attributed to the cases in Exhibit A

14

The bankruptcy court concluded that Debtor fraudulently represented the cases on Exhibit A were filed and ongoing, and either Debtor or a member of his firm was as attorney of record. The evidence showed that at least one of the purported clients, Rogelio Herrera, had not signed a retainer agreement and Howard Law had not filed his complaint. Debtor makes no argument relevant to the court's rationale for finding fraudulent misrepresentations, and he has thus waived the issue. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

Furthermore, we find no error in the court's ruling. Debtor provided Exhibit A as part of his efforts to procure the loan from RHA, and he attested that Howard Law represented the clients listed in Exhibit A. That representation was false. The evidence supports the bankruptcy court's holding that Debtor had knowledge of the falsity of that representation and made it with intent to deceive, and that RHA justifiably relied on the representation and sustained damage as a result. Debtor argues that the court should have credited his testimony that the misrepresentations were innocent mistakes and not intentional. But the court did not find Debtor's testimony to be credible, and we "give singular deference to a trial court's judgments about the credibility of witnesses." *Cooper v. Harris*, 137 S. Ct. 1455, 1474 (2017).

---

were expected attorney's fees or the total expected recovery for each client. The bankruptcy court determined that the values corresponded to expected attorney's fees, but this issue was unrelated to the court's ruling.

Regarding the fraudulent omissions, Debtor argues he had no duty to disclose the pending lawsuits or the Virage liens because the relevant information was publicly available. But, in a business transaction, parties have a duty to disclose facts basic to the transaction if they know the other party is about to enter into the transaction under a mistake and would reasonably expect disclosure. *See In re Apte*, 96 F.3d at 1324.

Although the liens and lawsuits were publicly discoverable, Debtor had a duty to disclose them based on: (1) the obligation in the Agreement to disclose "any litigation" that could have a "material adverse effect" on his "business, operations, property or financial or other condition;" and (2) the statement that he had "not taken any action (including executing documents) or failed to take any action, which . . . would materially and adversely affect any Claim, or . . . would give any person or entity other than a Client or [Debtor] an interest in the award or the proceeds stemming from a Claim." Given the Agreement's express requirements of Debtor, RHA could reasonably expect him to disclose pending lawsuits and liens affecting the cases in Exhibit A.

Debtor further argues that RHA failed to prove he made the omissions with intent to deceive. But again, Debtor provided the list of cases—which became Exhibit A to the Agreement—to procure the loan. He specifically represented that attorney's fees in cases listed in Exhibit A would be pledged to repay the loan. Yet, at the time of the Agreement, he knew certain workers' compensation clients listed in Exhibit A had left

16

Howard Law, and fees in other cases were already pledged to Virage. The record supports the bankruptcy court's finding of intent because Howard provided the list of cases, and other financial information pertaining to Howard Law, to induce RHA to make the loan but failed to disclose material changes prior to executing the Agreement.

Finally, Debtor contends that RHA failed to prove its reliance was justified because Mr. Hodge is a sophisticated lender with many years of experience in underwriting litigation funding loans. But in cases of fraudulent omission, reliance and causation are established and need not be separately proven. *In re Apte*, 96 F.3d at 1323 ("nondisclosure of a material fact in the face of a duty to disclose . . . establish[es] the requisite reliance and causation for actual fraud under the Bankruptcy Code"); *see also Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972) ("Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery."); *Titan Grp. v. Faggen*, 513 F.2d 234, 239 (2d Cir. 1975) ("In cases involving non-disclosure of material facts, even when coupled with access to the information, materiality rather than reliance thus becomes the decisive element of causation.").

Debtor does not demonstrate error in the bankruptcy court's factual findings or its legal conclusions. The bankruptcy court properly held that RHA had standing to file the nondischargeability complaint, and it did not

17

err by determining that Debtor's conduct constituted fraudulent misrepresentations and omissions under § 523(a)(2)(A).

## CONCLUSION

Based on the foregoing, we AFFIRM the nondischargeable judgment in favor of RHA.